IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES of AMERICA                                                    PLAINTIFF/RESPONDENT

V.                              No.  5:08-CR-50024-JLH
                                No.  5:11-CV-05031-JLH

HIPOLITO BARAJAS-ORTIZ                                                       DEFENDANT/PETITIONER

**REPORT AND RECOMMENDATION**

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions, *See ECF No.* 43 filed February 04, 2011, under 28 U.S.C. Section 2255.  The Government filed its Response, *See ECF No.* 46 on February 14, 2011.  The court appointed Mauricio Herrera to represent the Defendant and an Evidentiary Hearing was conducted on December 16, 2011.

**I.  Background**

On March 5, 2008, a three count Indictment was returned against Hipolito Barajas-Ortiz (hereinafter Barajas). (ECF No.1) Count 1 charged Barajas with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. Count 2 charged Barajas with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Count 3 charged Barajas with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1).

On June 2, 2008, Barajas appeared with his attorney, Kenneth Osborne,  before the Honorable Jimm Larry Hendren and entered a plea of guilty to count 3 of the indictment per a written plea agreement. (ECF No. 22) On October 31, 2008, a sentencing hearing was held in

which Barajas appeared with his attorney and was sentenced to 216 months imprisonment, 3 years of supervised release, a $100,000 fine, and a $100 special assessment. (ECF No.26 & 28) On November 10, 2008, Barajas filed a notice of appeal (ECF No.30) and on November 10, 2009, the Eighth Circuit entered its Judgement affirming the district court's sentence finding that the sentence was imposed within the undisputed guideline range and was reasonable. *United States v. Barajas-Ortiz*, 351 Fed. Appx. 159 ( 8th Cir. 2009).  The Mandate was issued on March 10, 2010 (ECF No. 42) and on February 4, 2011, Barajas filed this instant Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody contending that (1) his plea was not voluntary and (2) that his counsel was ineffective. (ECF No.43).

The court appointed an attorney to represent the Petitioner and a hearing was conducted on December 15, 2011.  At the hearing the Petitioner and his attorney testified as follows:

**1. Hipolito Barajas-Ortiz** testified, in substance, on direct examination that he was the named defendant in a three court indictment and that he was represented by Mr. Osborne.  When he plead he represented to the judge that he was satisfied with his attorney. He acknowledged that he plead guilty to one count of delivery. He stated that he met with his attorney two to three times and the punishment range was discussed and his attorney told him he could receive 0-20 years but he never told him he would get 18 years. (R. 50:55). He knew that the sentence would be a minimum of 5 years but he thought he would get 7-8 years.  He did not remember signing the Plea Agreement (R. 52:17) but admitted that he signed certain documents.  He understood the maximum he could receive was 20 years. He denied that his attorney discussed relevant conduct with him. Since he almost got the maximum sentence he would have preferred to go to trial. He

admitted that he went over information with the probation officer but did not remember going over any report prepared by the probation officer.

     On cross-examination the Defendant admitted he could get up to 20 years and that his attorney and the judge told him that (R. 57:42).  He admitted signing a plea agreement, it was translated to Spanish, and he reviewed it with Mr. Osborne.  He admitted to the court that the plea agreement was interpreted for him, he went over it with his attorney and that he understood the agreement. (R. 58:35).  Before the Judge took his plea he was asked if he had any questions and he informed the court that he did not.  Defendant admitted that on page 5 of the plea transcript the Judge informed him that punishment would be up to the Judge.  The only thing guaranteed to the Defendant was that he would not get more than 20 years.  He and his attorney did have discussions about the sentencing guidelines and he explained his initial discussions were only estimates.  The Defendant stated that he understood the judge could consider "other criminal activity" other than the count I that he plead guilty to (R. 1:02:01). The Defendant admitted that he reviewed paragraph 8 (Maximum Penalties) and 12 (Relevant Conduct) of the plea agreement. (R. 1:04:26).  The original PSR had the guidelines at 20 years. (R. 1:05:01).  The Defendant also admitted that the stipulation in the plea agreement was a benefit to him. (R. 1:05:45).

     On redirect the Defendant stated that he did not remember discussing with his attorney concerning stipulating to the amount of drugs (1:07:25) but at the sentencing hearing he did understand it and agreed to it (1:07:45).  The Defendant admitted that he was charged with money laundering and conspiracy but said he did not understand each count could carry a separate penalty. He did discuss the other two counts with his attorney and that they were going

to take away the other two charges but he did not believe he would get 18 years. He felt he was set to go to trial on all three charges on June 2 (R. 1:11:16).  He did not discuss going to trial on the two charges that were dismissed. He denied any trial preparation on his conspiracy charge (1:12:05) and that he only discussed that the government would dismiss two of the counts and keep only one charge (R. 1:13:30).  When he plead he was convinced that the government could make its case.

The Court questioned the Defendant concerning his allegations in his petition that "Defendant's counsel advised him that he would face a Guidelines sentence somewhere around 50-60 months imprisonment, and if the court asked the defendant had anyone made any promises or threats to encourage him to plead guilty, the defendant was to answer 'no' because he, the lawyer and the prosecutor had already talked to the judge and worked everything out 'off the record'." The Defendant only responded that his attorney advised him that he would get the minimum sentence of five to eight years and that he told him this after he plead but before he was sentenced. When asked why the Defendant did not tell the judge at sentencing that he had been promised 5-8 years he stated that he was confused (R. 1:17:58). When asked by the court if his attorney had made him a promise the Defendant testified "no, he didn't make me a promise, he just never told me about the 18 years" (R. 1:18:29).

On re-cross examination the Defendant admitted that his attorney did not make him a promise but he did not tell him about the 18 years (R. 1:21:35) but that his attorney thought it would be 5-8 years.  At sentencing the judge did inform me that the guideline range was 180 months to 235 months (R. 1:22:42) and he asked me if I had any questions and the only statement I made to say I was sorry.  I knew I was getting more than 5-8 years and I made no objection to

the judge. (R. 1:23:37)

  2. Kenneth Osborn testified that he was an experienced federal criminal attorney and made no promise to the Defendant that he would receive a 5-8 year sentence. His standard practice was to inform the defendant of the statutory penalty and expected guideline range. He stated that he advised the Defendant that his opinions about the guidelines were only advisory and may not be accurate. He never informed the Defendant that himself, the prosecutor and the judge had met and discussed his case and that he would receive a sentence of 50-60 months. (1:27:50). The Defendant was originally charge with three counts, each carrying up to 20 years in prison, and he considered it a benefit to plea to only one of the charges. The charge that the Defendant plead guilty to was a very strong case for the government because the delivery was both witnessed and video tapped by the government. He discussed all counts with the Defendant in preparation for trial and in discussing the options and knew that he would be found guilty of the deliver and "we made the determination that we would fight the rest out at sentencing". (1:29:15). The Defendant did tell him that was what he wanted to do. He asked the interpreter to read the entire plea agreement document to the Defendant. He specifically discussed relevant conduct with the Defendant and he knew they would argue about that at sentencing. He testified that his strategy was, since he would be convicted of count three, it was to his advantage to have the other two counts dismissed and argue relevant conduct at sentencing because he would gain acceptance of responsibility. He testified that it was a harsh pre-sentence report and made objections to the PSR but ultimately entered into a stipulation because that was the best option. He did discuss this strategy with the Defendant the next day before the sentencing with an interpreter. (1:36:01). He told the Defendant that the stipulation was the best strategy because he

would not have enough evidence to overcome the governments case and the Defendant agreed with this strategy.

On cross examination he admitted he probably did not spend a lot of time going over the stipulation with the Defendant (1:37:34). The Defendant never insisted on a hearing to determine quantity of drugs but he choose the option of the stipulation. Mr. Osborn testified that the Defendant sent a letter sometime later instructing him to appeal his case, which he did, but he filed and Andrews Brief. 1:43:30.

## II. Discussion

The Petitioner first contends that his plea was not voluntary because he did not understand the aspect of "relevant conduct" and its effect upon the mandatory minimum sentence. (ECF No. 44, p. 7-8).

### A. Voluntariness of the Plea:

The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, (1970); see *Boykin v. Alabama*, 395 U.S. 238, 242, (1969); *Machibroda v. United States*, 368 U.S. 487, 493, (1962). *Hill v. Lockhart* 474 U.S. 52, 56, (U.S.Ark.,1985)

    1. Trial Strategy:

The Petitioner was initially arraigned on the indictment on March 14, 2008 and at that time was informed of the charges and the possible penalties. The case was initially set for trial on April 21, 2008 (ECF No. 10) but, on motion of the Defendant (ECF No. 19), the trial was continued to June 2, 2008 (ECF No. 20). The Petitioner executed a Plea Agreement (ECF No.

22) on May 29, 2008 agreeing to plea guilty to one court of delivery (Count 3 of the Indictment) and the Government agreed to dismiss Count's 1 and 2. (Id., ¶ 1). Significantly in the Plea Agreement the Government agreed that the maximum term of imprisonment would be twenty years. (ECF No. 22, ¶ 8).  By this agreement Mr. Osborn had eliminated the potential for the more harsh penalties set forth in 21 U.S.C. § 841(b)(1)(A)(viii) of not less than 10 or more than life and 841(b)(1)(B)(viii) of not less than 5 and not more than 40 years and settled on the penalty set forth in 841(b)(1)(C) of not more than 20 years imprisonment.

Mr. Osborn testified that the delivery charge was a very strong case for the government because drug agents had both witnessed and video taped the transaction.  He felt that if he could get the government to drop the conspiracy charge and the money laundering charge that he could argue about the drug quantities at sentencing. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *U.S. v. Rice*, 449 F.3d 887 at 897 (*quoting Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). See also *Francis v. Miller*, 557 F.3d 894 (8th Cir. 2009) (trial strategy decision, if reasonable at the time, cannot support ineffective assistance claim even if, in hindsight, better choices could have been made).

The Defendant has offered no argument that Mr. Osborn's strategy in this regard was in anyway defective. Through this strategy the Defendant avoided an additional charge of conspiracy to deliver methamphetamine and money laundering and the possibility of substantially greater penalties.

### 2. Alleged Promise of a Specific Sentence

The Defendant asserted in his petition that his attorney informed him "that he would face

a Guidelines sentence somewhere around 50-60 months imprisonment", and if the court asked the defendant had anyone made any promises or threats to encourage him to plead guilty he was to answer "no" because his attorney, the prosecutor and the judge had worked everything out "off the record" (ECF No. 44, p. 10).

In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court noted that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262, 92 S.Ct. at 499. Therefore, the validity of a guilty plea may be impaired where the plea is induced by misrepresentations, including unfulfilled or unfulfillable promises. *See Mabry v. Johnson*, 467 U.S. 504, 509, (1984) (quoting *1174 *Brady v. United States*, 397 U.S. 742, 755, (1970)); *Cited by U.S. v. Camacho-Bordes* 94 F.3d 1168, 1173 (C.A.8 (Minn.),1996)

The Defendant argued at hearing that his attorney had represented to him that his sentencing range would be between 7-8 years. (R. 50:55). On cross examination the Defendant admitted that his attorney did not promise him that he would receive 5-8 years but that he just never told him that he would get 18 years. (R. 1:18:29). When asked by the court if his attorney had made him a promise the Defendant testified "no, he didn't make me a promise, he just never told me about the 18 years" (R. 1:18:29).

The Defendant initially testified that he did not remember signing the plea agreement but on cross examination he admitted that he stated to the court at the time of plea that the plea agreement was interpreted for him, he went over it with his attorney and that he understood the agreement. (R. 58:35). *See United States v. Gray*, 152 F.3d 816, 820 (8th Cir. 1998) (rejecting

claim of involuntary plea where defendant acknowledged he was pleading guilty of his "own free will" and denied any threats or coercion); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (defendant's representations during pleataking carry strong presumption of verity)

In paragraph 8 of the Plea Agreement, Barajas agreed that by pleading guilty to count three of the indictment he faced a maximum penalty of 20 years and the possibility of a mandatory minimum of either 5 years or 10 years based on a determination of relevant conduct. The law in this circuit is clear that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences. *See U.S. v. Granados*, 168 F.3d 343, 345, 168 F.3d 343 (C.A.8 (Neb.),1999) citing *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir.1994).

In paragraph 10 of the Plea Agreement, Barajas was advised that the court could sentence him to "any sentence within the statutory range." In paragraph 11 of the Plea Agreement, Barajas was advised that the agreement did not promise a particular sentence and that discussions about the guideline range were only an attempt to guess at the correct guideline range and were not binding on the court. In *United States v. Thomas,* 27 F.3d 321 (8th Cir. 1994), the Eighth Circuit held that counsel's failure to inform the defendant that he would be sentenced under the guidelines as a career offender did not constitute ineffective assistance of counsel. See also *United States v. Spears*, 235 F.3d 1150, 1152 (8th Cir.2001) (holding that a defendant's guilty plea was "knowing and voluntary," despite "any confusion about how he would fare under the Sentencing Guidelines").

At the plea hearing the Petitioner acknowledged to the court that the Plea Agreement had been translated from English to Spanish for him and that he had reviewed it with his attorney and

signed the document. (ECF No. 39, p. 4). He also acknowledged to the court that he understood the maximum penalty he could receive (Id., p. 5) and the possibility of mandatory minimum of either five or ten years depending on relevant conduct. (Id., p. 6). During the Defendant's testimony at the evidentiary hearing he confirmed all of the above.

The Defendant's representations in open court that he understood the plea and entered into the plea knowingly and voluntarily carry great weight. "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir.1997) (internal citations omitted).

The Defendant's allegation in his Petition concerning the alleged promise made by his attorney, the U.S. Attorney, and the court is not supported by his own testimony, is in conflict with his attorney's testimony and in conflict with the record. The Court finds that the Defendant's assertion in his pleading that his attorney promised him that he would receive 50-60 at sentencing is not believable.

**3. Relevant Conduct**

The Defendant also contends that his plea could not have been voluntary because he did not understand "relevant conduct" and how it would be used at sentencing.

    a. Law in Effect at the Time:

Just what can constitute relevant conduct has been variously interpreted. In Jenkins, a panel of this court held that in determining whether a mandatory minimum applied to a distribution offense, the district court can aggregate drug quantities derived from relevant

conduct. *U.S. v. Jenkins*, 537 F.3d at 897 (8th Cir. 2008). Initially, in the case of U.S. v. Resinos the 8th Circuit the court held that by "using the converted quantity for the mandatory minimum in Jenkins II, this court imported the concept of relevant conduct into the drug quantity calculation used in applying § 841(b)(1)". *U.S. v. Resinos* 623 F.3d 616, 618 (C.A.8 (Ark.),2010). The indictment in Resinos charged five counts of possession with intent to distribute meth for the sales on June 9, 10, 19, 29, and July 7. Count five charged Resinos with distribution on July 7. Resinos pled guilty only to count five; in exchange, the government dismissed the remaining counts. Calculating the guideline range, the presentence investigation report (PSR) held Resinos accountable for more than 50 grams of actual meth by aggregating amounts from the dismissed counts as "relevant conduct," conduct that was part of the same course of conduct or common scheme or plan as the offense of conviction. Circuit Judge Benton noted "that other circuits do not permit the aggregation of relevant-conduct quantities of drugs to trigger a mandatory minimum in a non-conspiracy case. However, because Jenkins controls, this panel cannot revisit its interpretation of § 841(b)(1)(A)" (Id.). The court then found that the mandatory minimum of 10 years was triggered and that the District Court's sentence of 120 months was affirmed.

      The 8th Circuit reconsidered Resinos en banc and in reversing *U.S. v. Jenkins* held that the "only drug quantities that may trigger a mandatory minimum sentence for a discrete violation of § 841(a) are those involved in the count of conviction." *U.S. v. Resinos* 631 F.3d 886, 888 (C.A.8 (Ark.),2011).

      As the Supreme Court stated in *Tollett v. Henderson*, 411 U.S. 258 at 267 (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was

not within the range of competence demanded of attorneys in criminal cases". *Citing McMann v. Richardson*, 397 U.S. at 771(1970). At the time the Defendant entered his plea and was sentenced Jenkins was the law and the Defendant's attorney cannot be held to be ineffective for following the law as it existed at the time. The Defendant's argument to the District Court to eliminate the drug amounts connected to the conspiracy would not have been successful because of Jenkins, the conspiracy charge, and the language in the Plea Agreement.

### b. Advisement of what would constitute Relevant Conduct:

In paragraph 12 of the plea agreement Barajas was advised at sentencing that the court could consider relevant conduct to include " conduct that is the subject of this investigation for which he has not been charged up to the date of the Agreement and/or which is the basis for any of the counts which will be dismissed pursuant to the Agreement." On cross examination the Defendant acknowledged that he remembered this paragraph of the plea agreement and it had been read to him in Spanish.

The Defendant testified that he met with his attorney two to three times and the punishment range was discussed and his attorney told him he could receive 0-20 years but he never told him he would get 18 years. (R. 50:55). He knew that the sentence would be a minimum of 5 years but he thought he would get 7-8 years. He denied that his attorney discussed relevant conduct with him. On cross examination however the Defendant admitted that he knew that the other "criminal activity" alleged in the counts the government was going to dismiss could be used against him (R. 1:02:01). He testified that the Plea Agreement was clear in this regard and that the Plea Agreement was read to him in Spanish and he understood it. (R. 1:04:26)

Mr. Osborn testified that he did discuss relevant conduct with the Defendant and a

conscious decision was made by the Defendant to enter a plea on one count and argue about relevant conduct at sentencing. In addition the Plea Agreement signed by the Defendant and previously referred to makes it clear that the criminal activity constituting the elements of the dismissed counts would be considered by the court. The Defendant's testimony that the relevant conduct issue was not discussed with his attorney is not believable.

It is clear from the record that the concept of relevant conduct was explained to the Defendant by his attorney and set forth in detail in the Plea Agreement. The court also explained in detail to the Defendant that his criminal conduct in relation to the dismissed charges would be considered at sentencing. The Defendant acknowledged his understanding to the court at the time of Plea. The Court finds that the Defendant's contention that the concept of relevant conduct was not explained him to not be believable.

### c. Prejudice

The Defendant argued in his Petition that his "guilty plea was not entered with an understanding of the mandatory-minimum consequences because the court's explanation of what mandatory-minimum the defendant could face certainly did not convey to the defendant what the mandatory-minimum and statutory maximum would be. (ECF No. 44, p. 7).

This argument has no merit because the Defendant cannot show that he was prejudiced by any alleged confusion with regard to the effect of relevant conduct on the mandatory minimum sentence. The Defendant's penalty range was limited to 20 years under 21 U.S.C. §841(b)(1)(C).

The PSR computed the base Defendant's Offense Level at 34[1]. A 4 point upward

---

[1] This was the base level amount after the stipulation of drug quantity entered into between the United States and the Defendant. Prior to the stipulation it was 38.

adjustment was added because the "defendant is determined to be a leader or organizer and have an aggravating role in a criminal activity that involved at least five participants" which brought the Adjusted Offense Level to 38. (PSR ¶ 36). After a 3 point adjustment for acceptance of responsibility the Defendant's Total Offense Level was determined to be 35. (Id. ¶ 43). There were no adjustments in the PSR for Chapter 4 enhancements. (Id., ¶ 42). As a result the Defendant's sentencing range was 188-235 months. [2]

Both the advisory guideline range and the sentence that Barajas received were in excess of the possible mandatory minimum sentence and therefore the mandatory minimum played no part in the sentence that Barajas received. Since Barajas's sentence was not based on the mandatory minimum sentence, he was not prejudiced by any misunderstanding about the application of relevant conduct to the determination of the mandatory minimum sentence.

The court finds that the Defendant's plea to the charge of Delivery of methamphetamine was Voluntary.

**B. Ineffective Assistance of Counsel:**

The Petitioner next contends that his attorney was ineffective (ECF No. 43, p. 5) by "withdrawing objection to defendant's PSI and stipulating to things in camera and off the record that the defendant had no knowledge of prior to or after entering his guilty plea." ECF No. 44, p. 9).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). 2254. *Cox*

---

[2] If the Defendant had only been held accountable for the for the amount he delivered on July 29, 2007 of 25.81 grams his Offense Level would have been 20 and, after adjustments, 21. That would have put his sentence guidelines range at 41-51 months.

*v. Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

The Defendant was charged in a three count indictment. In Count I the Defendant was charged with conspiring with Dagoberto Garcia and others to distribute methamphetamine between September 2006 and August 2007; in Court II with conducting and attempting to conduct financial transactions affecting interstate commerce which involved the proceeds of illegal activity; and in Count III with delivering a quantity of methamphetamine on July 29, 2007. (ECF No. 1).

The Plea Agreement specifically provided that the Court would consider "all relevant information with respect to defendant's background, character and conduct, including the

-15-

conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines". ECF No. ¶12. The Defendant testified that he went over paragraph 12 with his attorney prior to entering his plea and that the court stated it to him at the time of his plea.

### 1. Drug Quantity:

Although counsel for Barajas initially objected to both the PSR's determination of drug quantity and the enhancement for role in the offense, these objections were withdrawn at the sentencing hearing as part of a stipulation whereby the government agreed that Barajas should only be held responsible for between 1.5 and 5 kilograms of methamphetamine. (ECF No. 31; Sentencing Hr. p. 5-6). This stipulation reduced Barajas's base offense level from a level 38 to a level 34. (Id., p. 5-6). The court agreed to accept the stipulation (Id., p. 8) which reduced the advisory guideline range from 240 months to a range of 188 to 235 months. (Id., p. 10) In sentencing Barajas to 216 months, the court stated that Barajas had benefitted from the stipulation (Id., 12) and that the court would have been entirely justified in sentencing Barajas to 235 month or even going to 240 months. (Id., p. 14)

On cross examination at the hearing the Defendant admitted that the stipulation of drug quantity was a benefit to him (R. 1:05:45). On redirect the Defendant testified that he did not remember discussing the issue with his attorney but admitted that he did understand it and agreed to it (R. 1:07:45). Mr. Osborn testified that the PSR was harsh[3] and he entered into the stipulation

---

[3] The PSR found that the drug quantity attributable to the Defendant was 54.83 kilograms. (PSR ¶ 29).

because it was the best option and he discussed this strategy with the Defendant with an interpreter. (R. 1:36:01). On cross examination Mr. Osborn admitted that he did not spend a lot of time going over the stipulation with the defendant (R. 1:37:34).

The decision to negotiate for a certain drug quantity verses what the government might prove is a matter of strategy. Mr. Osborn testified that he might be successful in disproving some of the drug quantities attributable to the Defendant but that the government would have more than enough evidence to exceed 5 kilograms.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *U.S. v. Rice*, 449 F.3d 887 at 897 (*quoting Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). See also *Francis v. Miller*, 557 F.3d 894 (8th Cir. 2009) (trial strategy decision, if reasonable at the time, cannot support ineffective assistance claim even if, in hindsight, better choices could have been made).

**2. Good Faith Advice:**

It is deficient performance for an attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea. *McMann v. Richardson*, 397 U.S. 759 at 769-71, 90 S.Ct. at 1448-49. In this case however, the law at the time would have allowed the government to aggregate the drug amount, and may still have allowed it under the particular facts of this case. In addition there is no question that the Defendant's attorney would have never been able to have negotiated the Plea Agreement in the first place without the concession to consider the relevant conduct of the conspiracy at sentencing.

In this case, the facts set forth in the PSR amply supported the drug quantity determination that Barajas was involved in more than 15 kilograms of methamphetamine.

Barajas's co-defendant, Dagoberto Garcia, gave a post arrest statement in which he admitted to selling approximately 3 ounces of methamphetamine a week for Barajas for approximately 2 years. (PSR ¶ 16). In addition, five separate confidential informants provided information that Barajas distributed multiple pound quantities of methamphetamine on a regular basis over a substantial period of time (PSR ¶¶ 17-21) which totaled more than 50 kilograms of methamphetamine. (PSR ¶ 29) .

In *Toledo v. United States*, 581 F.3d 678 (8th Cir. 2009) the Eighth Circuit stated, "It is not ineffective assistance of counsel to withdraw objections that have no support in the law." Id. at 681. See also, *Cassidy v. United States*, 12 F.3d 1102 (8th Cir. 1994)(not designated for publication)(defendant's claim of ineffective assistance of counsel based on counsel's withdrawal of an objection was properly denied as there was no prejudice to defendant since there was no reasonable probability that the objection would have prevailed); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.");*United States v. Flores*, 2006 WL 1649317 ( N.D.Iowa 2006)(Not Reported in F.Supp.2d) ( no ineffective assistance of counsel for counsel withdrawing objection to PSR where PSR was correct).

The Court finds that the Mr. Osborn did not provide ineffective assistance by stipulating to a drug quantify of between 1.5 and 5 kilograms.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

Dated this 9th day of March 2012

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE